UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ANTHONY McPEEK,
ET AL.,

      Plaintiff,                         No. 15-14501

v.

                                       Magistrate Judge R. Steven Whalen

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY,

      Defendant.
_____/

**OPINION AND ORDER**

Currently before the Court is Defendant Allstate Vehicle and Property Insurance Company's ("Defendant's") January 25, 2018 Motion for Partial Summary Judgment [Docket #27] seeking dismissal of claims by Plaintiff Erin Lynn Steele ("Steele") based on breach of contract, reformation, or under any other theory of recovery. For the reasons set forth below, Defendant's motion is GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On November 23, 2015, Plaintiffs William Anthony McPeek ("McPeek") and Steele filed suit in Wayne County Circuit Court, bringing claims of breach of contract and violations of the the Michigan Uniform Trade Practices Act ("UTPA"), and requesting reformation of the insurance policy for McPeek's Ecorse, Michigan home. *Complaint,*

-1-

*Docket #1-1, Exhibit A.* On December 30, 2015, Defendant removed the case to this Court under 28 U.S.C. § 1441. *Docket #1.*

Plaintiffs make the following allegations. Defendant issued a Homeowners' Insurance Policy, No. 960 524 212 ("Policy") from January 9, 2015 to January 9, 2016 for coverage for the property ("Property") located at 12 West Charlotte in Ecorse, Michigan owned by McPeek. *Complaint,* ¶ 4. The Policy provided coverage for fire in the amount of $277,178.00; other structures, $27,718.00; and personal property, $166,307.00. *Id.* On February 22, 2015, the Property sustained fire damage. *Id.* at ¶ 7; *Defendant's Motion, Docket #27, Exhibit 1,* pgs. 17-19, 42-44, 78-82, 94. Both Plaintiffs were residing at the Property at the time of the fire. *Defendant's Motion, Docket #27, Exhibit 1,* pgs. 17-19, 42-44, 78-82, 94. Plaintiffs sustained insured losses to the Property. *Id.* at ¶ 8. Plaintiffs gave timely notice of the losses and otherwise complied with the requirements under the Policy for making a claim for insurance proceeds. *Complaint* at ¶ 9.

Plaintiffs allege breach of contract resulting from Defendant's failure to properly investigate and pay the claim. *Id.* at ¶ ¶ 13-14. They allege that they have sustained additional, foreseeable damages as a result of Defendant's breach. *Id.* Plaintiffs also allege violations of UPTA and request the equitable remedy of reformation of the Policy to include Steele as a named insured. *Id.* at ¶ ¶ 20-28.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

Defendant argues that Steele cannot show that she is insured under the Policy in dispute. *Defendant's Brief,* 5-18, *Docket #27,* Pg ID 113. Defendant also contends that Steele cannot show by clear and convincing evidence that her omission from the Policy resulted from a mutual mistake. *Id.* at 19.

In response, Plaintiffs concede that Steele is not named on the Policy but notes that under the Policy, "insured person(s)" are defined as "you and, if a resident of your household: (a) any relative; and (b) any person under the age of 21 in your care."[1] *Response,* 2, *Docket #31,* Pg. ID 245; *Plaintiff's Exhibit 1.* Plaintiffs concedes in effect that Steele (described as McPeek's "significant other") is not a relative but that Steele's four minor children who stayed at the Property on a intermittent basis qualify as persons under McPeek's care. *Id.* Plaintiffs argue that the Policy should be construed to include both Steele and her

---

[1] While Plaintiffs concede, in effect, that Steele did not have contractual privity with Defendant, they argue that the language of the Policy encompasses both Steele and her children.

children. *Id.* at 3-4. Alternatively, Plaintiffs contend that the Policy should be reformed to include Steele and her children. *Id.* at 5-6.

**A. The Policy Cannot be Construed to Include Steele and/or Her Four Children**

In determining coverage under an insurance policy, "'[t]he parties' intent is presumed to reside within the contractual language.'" *Allstate Property Cas. Ins. Co. v. Hatch*, 2013 WL 2626782, at *7 (E.D.Mich. June 11, 2013)(*citing Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 476, 663 N.W.2d 447, 458 (2003)). "An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Heniser v. Frankenmuth Mut. Ins. Co.,* 534 N.W.2d 502, 505, 449 Mich. 155, 161 (Mich. 1995)(*citing Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440 (1982)). "'The fact that a policy does not define a relevant term does not render the policy ambiguous.'" *Allstate,* at *7, (*citing Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354, 596 N.W.2d 190, 194 (1999)).

The terms of the Policy cannot be interpreted to extend to either Plaintiff or her four minor children. On January 8, 2015, McPeek named only himself and his adult son, James McPeek, and indicated that a total of two individuals lived at the Property. *Defendant's Exhibit 5*. McPeek (married to another individual at the time the Policy was created) is not related to Steele and because she is neither a relative nor under the age of 21, she is not covered under the terms of the Policy. Moreover, Steele cannot show that she has an

insurable interest in the Property. She conceded that she did not have legal title to the Property; did not contribute to paying the household expenses; and had very few possessions (clothes and miscellaneous items) at the Property which were altogether worth less than $500. *Defendant's Exhibit 4* at pg 6-7. She noted that at the time of fire, the house destroyed in the fire contained "very few things" that her parents had purchased for the children. *Id.* As such, she is unable to show a pecuniary loss from the fire.

Likewise, Steele's children cannot be considered either "residents" of the household or under McPeek's "care." Determination of "whether a person is a 'resident' of an insured's 'household'" requires consideration of a number of factors. *Workman v. Detroit Auto. Inter-Insurance Exchange*, 274 N.W.2d 373, 379, 404 Mich. 477, 496 (Mich. 1979). "[N]o one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Id.*

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging 'residence' . . . in the household. *Id.* at 496-497 (internal citations omitted).

Under the first, third, and fourth factors, both Plaintiffs conceded that the children resided with their grandparents and that the four children stayed at the Property only on some weekends and during school vacations. Steele testified that her oldest child, "Baily," lived her grandmother since she was an infant and at the time of Steele's deposition, the

grandmother had guardianship rights. *Defendant's Exhibit 4* at pgs 4-5. Steele reported that her other three children had been residing with their grandfather on a "usual[]" basis for several years prior to the fire. *Id.* at pg. 5. When asked if the three younger children had ever lived at the Property, the grandfather testified "no," and said that while the children visited Steele sporadically at the Property, they lived with him "pretty much . . . full time." *Reply, Exhibit 1* at 1, 11-12. As to the second factor, neither Plaintiff stated that the children stayed at the Property under any formalized schedule. None of the children was staying at the house at the time of the fire. *Id.* None of the children had keys to the house. *Id.* at 8. The children stayed with their grandparents during the holidays. *Id.* at pg. 13. Although Plaintiffs' failure to show that the children were residents of the Property moots the question of whether they were under McPeek's "care," McPeek conceded that other than providing them meals and "shelter" during their visits, the grandparents provided for their care. *Plaintiff's Exhibit 2* at 2-3. McPeek testified that the grandparents provided clothes for the children and that he would "fill in as necessary" but did not provide them with games, books or computers. *Id.* at 7. Accordingly, the Policy cannot be interpreted to cover either Steele or her children.

### B. Plaintiffs Cannot Show that They are Entitled to Reformation of the Policy

"A court of equity has power to reform the contract to make it conform to the agreement actually made. *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 284–85, 273 Mich.App. 388, 398 (Mich.App.2006). "'Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but

as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties.'" *Mate v. Wolverine Mut. Ins. Co.*, 592 N.W.2d 379, 384, 233 Mich.App. 14, 24 (Mich.App.1998)(*citing Olsen v. Porter*, 213 Mich.App. 25, 29, 539 N.W.2d 523 (Mich. App.1995).

> "To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence. A unilateral mistake is not sufficient to warrant reformation. A mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation." *Casey,* 729 N.W.2d at 285, 273 Mich.App. at 398 (internal citations omitted).

Here, Plaintiffs' contention that they intended that Steele would be a named insured is supported only by McPeek's deposition testimony that he wanted Steele on the Policy. McPeek testified that he "electronically signed and submitted" an application with Steele's name and the name of her children along with their social security numbers sometime during the months prior to the January, 2015 activation of the Policy. *Response* at 7, *Plaintiff's Exhibit 2* at 6. However, despite McPeek's claim, he conceded that the Policy (covering only himself and his son) in effect at the time of the fire was e-mailed to him prior to the fire and that he "glanced over it."[2] *Defendant's Exhibit 1* at pg. 9; *Plaintiff's Exhibit 2* at pg. 6. Because McPeek has in effect "admitted that he 'had the opportunity to become aware' of the policy's terms," his failure to notify Defendant of the discrepancy forecloses reformation

---

[2]Moreover, while McPeek stated that he "e-signed" an application including Steele and her children, he is unable to produce a copy of the alleged application. *Plaintiff's Exhibit* at pg. 6-7.

of the Policy. "It is well established that an insured is obligated to read his or her insurance policy and raise any questions about the coverage within a reasonable time after the policy is issued. Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy." *Casey* at 729 N.W.2d at 283, 273 Mich.App. at 394–95. *Casey* held that reformation of the policy was not warranted given that Plaintiffs had "failed to show by clear and convincing evidence that a mutual mistake [was] made." *Id.* at 283, 398. "Rather, the Caseys were simply unilaterally mistaken about the terms of their policy—a mistake that could have been remedied had they inquired about those terms." *Id.* at 283, 398-399. Likewise here, McPeek's failure to follow up after reading the Policy bars his entitlement to the remedy of reformation.

Plaintiffs cannot succeed on his alternative claim that reformation was not due to a mutual mistake, but rather, McPeek's "mistake" coupled with Defendant's "fraud."

> "To succeed on a claim for fraud, Plaintiff must plead and prove that '(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.'" *Rautu v. U.S. Bank*, N.A., 2013 WL 866480, at *2 (E.D.Mich. March 7, 2013)(*citing M & D, Inc. v. McConkey*, 231 Mich.App. 22, 27 (1998)).

Plaintiffs' allegations of fraud are limited to the allegation that the Policy failed to identify Steele as a named insured "due to a fraud, mistake, accident, inadvertence or surprise," *Complaint* at ¶ 28, and the response to the present motion stating that the failure to include Steele and her children was either a mutual mistake of "[a]t worst," a unilateral mistake by McPeek "coupled with fraud when it was removed by, presumably the parties in control of that policy, Defendant's agents." *Response* at 8. However, Plaintiffs have provided no evidence to show that Defendant's agents represented to McPeek that Steele and her children were named insured then knowingly or recklessly omitted them from Policy.

For these reasons, Defendant's motion [Docket #27] is GRANTED, dismissing claims by Steele WITH PREJUDICE.

IT IS SO ORDERED.


Dated: September 18, 2018             s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE
                                      JUDGE

## CERTIFICATE OF SERVICE

      I hereby certify on September 18, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on September 18, 2018.

                                            s/Carolyn M. Ciesla
                                            Case Manager for the
                                            Honorable R. Steven Whalen